UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PAUL MICHAEL BARRY, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
|     v. | )    2:14-cv-00339-JDL |
| | ) |
| CUMBERLAND COUNTY JAIL, et al., | ) |
| | ) |
|     Defendants | ) |

### RECOMMENDED DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ORDER ON PLAINTIFF'S MOTIONS TO INTRODUCE ADDITIONAL EVIDENCE

In this action, Plaintiff Paul Michael Barry alleges that Defendants violated his constitutional rights while he was an inmate at the Cumberland County Jail. More particularly, Plaintiff asserts that Defendants improperly opened his legal mail and lost or destroyed some of his personal property.

The matter is before the Court on the motion for summary judgment filed by Defendants Cumberland County Jail, Kevin Joyce, Steve Butts, Daniel Moore, Nick Davis, and Joshua Pickering.[1] (Defendants' Motion for Summary Judgment, ECF No. 51.) After Plaintiff filed his response to Defendants' summary judgment motion, he filed two motions by which he seeks to introduce additional evidence in opposition to Defendants' motion. (Plaintiff's Motion to Add Evidence, ECF No. 71; Plaintiff's Motion to Add Enclosed Letter, ECF No. 72.) The two motions are also before the Court.

---

[1] In some of Defendants' filings, Defendant Pickering's last name is spelled Pickreign. Because Defendants' answer refers to Defendant "Pickering" and because the Court's docket references Defendant "Pickering," this Recommended Decision will refer to Defendant "Pickering."

Following a review of the pleadings and summary judgment filings, and after consideration of the parties' arguments, I grant Plaintiff's motions to introduce additional evidence, and I recommend that the Court grant Defendants' motion for summary judgment.

## BACKGROUND

*Plaintiff's Pleadings*

On August 25, 2014, Plaintiff filed a writing in which he alleged Defendants regularly opened his legal mail outside his presence, with specific reference to mail from his attorney, the Clerk of the Court, and from the Maine Board of Overseers of the Bar. Plaintiff's writing was docketed as Plaintiff's complaint. (ECF No. 1.)

In a filing on November 17, 2014, Plaintiff alleged, inter alia, that while he was receiving inpatient care at a hospital, Defendants collected and then lost his property, including some of his legal records. Plaintiff's submission was docketed as a response to an order to show cause regarding Plaintiff's intent to proceed. (ECF No. 6.) [2]

On December 5, 2014, Plaintiff filed a form complaint, which was docketed as Plaintiff's amended complaint. (ECF No. 8.) In his amended complaint, Plaintiff asserts violations of his rights under the First Amendment and Eighth Amendment of the United States Constitution, based on the following allegations:

> Several of my legal mail letters including from your honorable court clerk have been opened, had forms taken out. Also between Oct 5 2014 and Oct 27 2014 all my personal property was taken and destroyed and/or thrown away by said staff, including all my legal research for my state case, legal letters and evidence I need to prove my innocence. Property just disappeared.

(*Id.* ¶ IV.)

---

[2] The circumstances Plaintiff describes in his submissions also relate to another case pending in this Court, *Barry v. Corizon Medical Services*, No. 2:14-cv-00527-JDL, which case Plaintiff filed on December 9, 2014.

*Defendants' Statement of Material Facts*[3]

Plaintiff's claims arise out of his incarceration at the Cumberland County Jail from January 16, 2014, to January 16, 2015. (Defendants' Statement of Material Facts ¶ 1, ECF No. 52.) [4] Plaintiff asserts: (1) that jail officers opened his legal mail; and (2) that his personal property was removed from his cell in October 2014 and the property was either lost or destroyed. (*Id.* ¶ 2.)

On six occasions, Plaintiff received legal mail that had been opened outside of his presence. (*Id.* ¶ 3.)[5] The opened mail consists of mail in envelopes with the following return addresses and postmarked dates:

(1) Board of Overseers of the Bar, August 13, 2014 (PageID # 286);

(2) Office of the Clerk, United States District Court, December 8, 2014 (PageID # 288);

(3) Office of the Clerk, United States District Court, August 4, 2014 (PageID # 289);

(4) Clerk of Courts, Cumberland County, December 20, 2014 (PageID # 289);

(5) Office of the Clerk, United States District Court, December 23, 2014 (PageID # 291);

(6) A windowed envelope showing no return address, October 30, 2014 (PageID # 291).[6]

(*Id.* ¶¶ 5 – 10.)

---

[3] Plaintiff's summary judgment factual submissions do not comply with Local Rule 56, which Rule required Plaintiff to admit, deny, or qualify the statements offered by Defendants, to set forth any additional statements in a separate document with separately numbered paragraphs, and to support each additional statement with citation to record materials having evidentiary quality. The Rule's requirements are not mere formalities.

[4] In support of their motion for summary judgment Defendants submitted a statement of material facts, which statement contains facts set forth in separately numbered paragraphs supported by record citations, in accordance with Local Rule 56(b). In opposition, Plaintiff has not admitted, qualified, or denied Defendants' statements, contrary to the requirements of Local Rule 56(c). Pursuant to Local Rule 56(f), facts contained in a statement of material facts "shall be deemed admitted unless properly controverted," if the facts in question are "supported by record citations." Consequently, the facts set forth in Defendants' statement are deemed admitted for purposes of Defendants' motion.

[5] Defendants do not contest this assertion for purposes of summary judgment. (*Id.* ¶ 3 & n.1.)

[6] According to Plaintiff's deposition testimony, this particular envelope was from "the federal court." (Barry Dep. Tr. at 65, ECF No. 53.)

Pursuant to the policy of the Cumberland County Jail, all legal mail must be opened in the presence of the inmate to whom the mail is directed. (*Id.* ¶ 17.) Plaintiff testified that he cannot prove who opened his legal mail. (*Id.* ¶ 11.)

Plaintiff has no evidence to suggest that Defendant Joyce opened any of his legal mail, that Defendant Joyce was present when Plaintiff's mail was opened, or that he ever read Plaintiff's mail. (*Id.* ¶¶ 12 – 14.) Defendant Joyce does not recall ever opening Plaintiff's legal mail. (*Id.* ¶ 15.) At some point, after Defendant Joyce learned that Plaintiff believed his legal mail had been opened outside his presence, Defendant Joyce asked Defendant Butts to address the issue with staff. (*Id.* ¶¶ 16, 18.) Defendant Joyce was not aware of a continuing issue with Plaintiff's legal mail being opened out of his presence, or of a practice of corrections officers opening inmates' legal mail out of the inmates' presence. (*Id.* ¶¶ 19, 20.)

Plaintiff has no evidence that Defendant Butts opened his legal mail, was present when Plaintiff's legal mail was opened, or ever read Plaintiff's legal mail. (*Id.* ¶¶ 21 – 23.) Defendant Butts does not recall ever opening Plaintiff's legal mail. (*Id.* ¶ 24.) At one point, Plaintiff informed Defendant Butts that he believed his legal mail had been opened out of his presence. (*Id.* ¶ 25.) Defendant Butts asked the lieutenants at the jail to remind their staff that legal mail should be opened in the presence of the inmate to whom the mail is directed. (*Id.* ¶ 26.) Defendant Butts was not aware of any further issue regarding Plaintiff's legal mail being opened outside his presence, nor was he aware of a practice of corrections officers opening inmates' legal mail out of the inmates' presence. (*Id.* ¶¶ 27, 28.)

Plaintiff's claim against Defendant Moore is limited to his property claim. (*Id.* ¶ 32.) Plaintiff also does not believe that Defendant Davis opened or read his legal mail. (*Id.* ¶¶ 34 – 35.)

Plaintiff has no evidence to suggest that Defendant Pickering opened his legal mail, and Defendant Pickering has no recollection of opening Plaintiff's legal mail.  (*Id.* ¶¶ 36 – 37.)

Plaintiff was a hospital inpatient from October 5, 2014, to October 27, 2014.  (*Id.* ¶ 38.) After Plaintiff's transfer to the hospital, Defendant Pickering asked Defendant Davis to clean Plaintiff's cell. (*Id.* ¶ 39.)  Because Plaintiff's cell was contaminated with blood and fecal matter, Defendant Pickering directed Defendant Davis to gather Plaintiff's personal property and to dispose of any contaminated, jail-issued items.  (*Id.* ¶ 40.)  Defendant Davis took a bag of Plaintiff's personal property from his cell to the property room and left it on the floor in front of the property room door.  (*Id.* ¶ 41.)  Defendant Davis did not throw away any of Plaintiff's personal property.  (*Id.* ¶ 42.)  Upon Plaintiff's return from the hospital, the bag with Plaintiff's personal property could not be found.  (*Id.* ¶ 43.)

Plaintiff is not aware of any evidence that Defendants Joyce, Butts or Moore removed personal property from his cell or was present for the removal of his property.  (*Id.* ¶¶ 46 – 47, 49 – 50, 52 – 53.)  Defendants Joyce and Butts deny involvement in the removal of Plaintiff's personal property from his cell.  (*Id.* ¶¶ 48, 51.)

*Plaintiff's Summary Judgment Response*

Plaintiff filed his response to Defendants' motion on December 16, 2015.  (ECF No. 69.) In support of his opposition to Defendants' motion, Plaintiff filed his answers to Defendants' interrogatories and copies of certain grievance forms.  In his answers to interrogatories, Plaintiff asserts that the property discarded while Plaintiff was in the hospital included Plaintiff's legal papers, including documents related to his federal court litigation and his state court criminal matter. (E.g., PageID # 371.)  Plaintiff contends that the grievance forms demonstrate a policy of taking property and opening legal mail, and that all of the Defendants are aware of the policy.

5

Plaintiff also references a second "packet" that he asserts contains evidence of the interference with his legal proceedings, including his defense of the state arson charge on which he was held in custody. The reference to the second packet appears to be a reference in part, to a 15-page "health symptom timeline" produced by Plaintiff. Lastly, Plaintiff mentions an April 27, 2015, letter from Defendants' counsel objecting to the production of video evidence requested by Plaintiff.

On January 4, 2016, Plaintiff filed a motion to introduce additional evidence. (ECF No. 71.) Through this filing, Plaintiff argues that evidence of a failure to remedy a problem and evidence of "widespread abuse" can generate liability for supervisory officers. The additional evidence consists of letters from Defendants' counsel to Plaintiff, which letters Plaintiff maintains demonstrate a failure to comply with discovery obligations as a litigation tactic.[7] (ECF Nos. 71-2 – 71-6.)

On January 11, 2016, Plaintiff filed another motion to introduce additional evidence, specifically a letter authored by Attorney Paul Aranson, Plaintiff's counsel in the state criminal proceedings, which letter Mr. Aranson sent to Defendant Butts on August 28, 2014. (ECF No. 72.) According to Plaintiff, Mr. Aranson's letter proves that Defendants knew of the opening of his legal mail. The letter includes the assertion that Plaintiff reported to Mr. Aranson that jail personnel were opening Plaintiff's legal mail. (ECF No. 72-1.)

## DISCUSSION

A.   **Plaintiff's Motions to Introduce Evidence**

Even though Plaintiff has not articulated a reason for his late filing, Plaintiff's motions are granted and the additional evidence will be considered. The supplemental documents that Plaintiff

---

[7] Discovery closed on September 14, 2015. (ECF No. 50.)

submitted, however, are not material to any factual issue in this case. In particular, discovery-related letters from Defendants' counsel do not support Plaintiff's contention that Defendants violated any discovery rules, nor do the letters support Plaintiff's substantive claims for relief. Similarly, Plaintiff's grievance documents do not generate any material facts to support Plaintiff's claims. Finally, Attorney Aranson's letter is also immaterial to the legal issues raised by Defendants' motion for summary judgment.

### B. Defendants' Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

The Court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Hannon v. Beard*, 645 F.3d 45, 47-48 (1st Cir. 2011). If the Court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied to the extent there are supported claims. Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

Plaintiff seeks to recover for alleged violations of his constitutional rights. Because Defendants are state actors, Plaintiff's claims arise under 42 U.S.C. § 1983.[8] Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Plaintiff alleges that his constitutional rights were violated when someone in the Cumberland County Jail opened and presumably reviewed his "legal mail," and when someone discarded his personal property, including his legal papers. Plaintiff, however, has failed to raise a genuine factual issue in support of either of his § 1983 claims against any of the named Defendants.

   *1.   Discarded property*

The loss of prisoner property due to a random, unauthorized act by a corrections officer does not offend due process. *Parrat v. Taylor*, 451 U.S. 527, 541 (1981). In fact, a constitutional deprivation is not established even if the loss or destruction of property is the product of intentional misconduct. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). In such circumstances, "predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will

---

[8] 42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

To maintain a claim under section 1983, a plaintiff must establish: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999). Here, Defendants have not challenged the fact that Plaintiff's allegations concern conduct under color of state law.

occur." *Id.* A federal cause of action exists only if the deprivation is the product of an established state procedure, or if state law provides the prisoner with no meaningful post-deprivation remedy for the loss. *Id.* at 532 – 33.

The summary judgment record establishes that the loss of Plaintiff's property was the product of either negligent or intentional conduct by corrections officers, but it was not the product of an established policy or procedure. In addition, Maine state law provides a prisoner with an adequate post-deprivation remedy.[9] Defendants, therefore, are entitled to summary judgment on Plaintiff's § 1983 claim regarding the destruction of his property.

    2.    *Legal mail*

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that a jail policy that provides for the opening of inmate mail from attorneys in the presence of the inmate to whom the mail is addressed is a valid means of balancing the inmate's right to maintain confidential attorney–client communications with the institutional desire to prevent the introduction of contraband. The Court's opinion in *Wolff* reflects that the Court was concerned not with jail personnel inspecting mail, but with jail personnel reading attorney–client communications.

> As to the ability to open the mail in the presence of inmates, this could in no way constitute censorship, since the mail would not be read. Neither could it chill such communications, since the inmate's presence insures that prison officials will not read the mail. The possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants prison officials' opening the letters.... [W]e think that petitioners, by acceding to a rule whereby the inmate is present when mail from attorneys is inspected, have done all, and perhaps even more, than the Constitution requires.

---

[9] Under the Maine Tort Claims Act, governmental entities are liable for property losses arising from the operation or maintenance of any public building. 14 M.R.S. § 8104-A(2). Maine law affords an individual an adequate remedy for the negligent or intentional destruction of personal property in the form of a common law conversion claim. *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798, 800. Because Plaintiff contends that the Defendants' actions violated his constitutional rights, and because the record lacks any reference to the Maine Tort Claims Act, however, I do not construe Plaintiff's amended complaint to assert a state law claim. Accordingly, this recommended decision does not address the merits of any potential state law claim regarding the loss of Plaintiff's property.

*Id.* at 577.

The uncontroverted record establishes that none of the identified opened envelopes contained correspondence between Plaintiff and his counsel. Because the record does not support a claim that could be based on the interference with or the compromise of the attorney-client relationship (i.e., a claim based on a violation of the Sixth Amendment), Defendants are entitled to summary judgment.

Plaintiff, however, maintains that all legal mail, regardless of its source, must be opened in his presence. Plaintiff's claim thus arguably extends beyond the attorney-client relationship and implicates the First Amendment and the Due Process Clause. [10] Even if an inmate's right to be present when legal mail is opened extends to all legal mail and is grounded in the first amendment right to petition the government to address a grievance or the due process right of access to the courts, to succeed on his claim, Plaintiff would have to demonstrate that he suffered prejudice as the result of the opening of his mail outside his presence. [11] *Lewis v. Casey,* 518 U.S. 343, 353

---

[10] The Supreme Court did not decide which particular constitutional right was implicated by inspection of inmate correspondence with counsel, but identified the First Amendment, the Sixth Amendment, and the Due Process Clause as potentially implicated by such activity. *Wolff*, 418 U.S. at 575 – 76. Courts have considered all of these constitutional provisions when evaluating such claims. *See*, *e.g.*, *Nordstrom v. Ryan*, 762 F.3d 903, 909 (9th Cir. 2014).

[11] The Fifth Circuit holds that "[t]he opening of incoming legal mail outside an inmate's presence for the purpose of inspecting for contraband does not violate a prisoner's constitutional rights." *Brewer v. Wilkinson,* 3 F.3d 816, 825 (5th Cir. 1993) (applying *Thornburgh v. Abbott,* 490 U.S. 401, 413–14 (1989), and *Turner v. Safley,* 482 U.S. 78, 89 (1987)). Additionally, as recently as 2010 the Ninth Circuit observed that an inmate's right to have legal mail opened in his presence is not clearly established for purposes of the qualified immunity doctrine. Moreover, incoming mail originating from a neutral arbiter like a state or federal court or the Board of Overseers is different from incoming mail from an inmate's attorney. The former group of communications is unlikely to contain confidential information or divulge the inmate's litigation strategy, whereas attorney–client communications are likely to contain such information. *See Jenkins v. Huntley*, 235 Fed. App'x 374, 376 (7th Cir. 2007) (affirming summary dismissal of claim based on opening and inspection of "legal mail" from state attorney's office and from attorney discipline commission); *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003) ("Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. Indeed, even mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney."); *Boswell v. Mayer*, 169 F.3d 384, 389 (6th Cir. 1999) (suggesting that inmate mail from a court would be protected only if it contained sensitive or confidential documents).

(1996) (requiring "a nonfrivolous legal claim [being] frustrated or ... impeded"); *Boivin v. Black,* 225 F.3d 36, 43 n. 5 (1st Cir. 2000) (citing *Lewis* and requiring a showing of actual injury); *see also Sowell v. Vose,* 941 F.2d 32, 34 – 35 (1st Cir. 1991) (observing that there could be cases in which "a prisoner need not show that the deprivation caused him an independent injury," such as where there was an absolute denial of access). Here, the record lacks any evidence to suggest that the subject mail contained confidential information, or was from a source that would otherwise generate constitutional concerns. Furthermore, Plaintiff has presented no record evidence from which a reasonable fact finder could conclude that he suffered harm by the opening of mail from the courts or the board regulating the conduct of Maine attorneys. Accordingly, Defendants are entitled to summary judgment regardless of whether Plaintiff's claim is based on the Sixth Amendment, the First Amendment, or the Due Process Clause.

    *3.    Individual defendants*

To the extent the record can be construed to support a constitutional deprivation based on the opening of Plaintiff's mail, or the destruction of his property, Plaintiff nevertheless cannot recover against the Defendants named in their individual capacities. First, the record contains no evidence that the individual Defendants were involved in the opening of Plaintiff's mail. In addition, the record establishes that the individual Defendants with supervisory responsibilities took appropriate action when Plaintiff informed them of his concerns regarding the opening of his mail. "Public officials may be held liable under § 1983 for a constitutional violation only if a plaintiff can establish that his or her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." *Ocasio–Hernández v. Fortuno–Burset,* 640 F.3d 1, 16 (1st Cir. 2011) (internal quotation marks omitted). On this record, the supervisory Defendants cannot reasonably be viewed as engaging in,

condoning or acquiescing in conduct that resulted in a constitutional deprivation. Plaintiff, therefore, cannot prevail on a claim of supervisory responsibility. Finally, the record lacks evidence to support the contention that any of the individual Defendants destroyed or discarded Plaintiff's property.[12]

### 4. *Municipal liability*

Although Plaintiff's pleadings do not identify an appropriate municipal defendant,[13] assuming, arguendo, that Cumberland County is a defendant in this action, the record establishes that the conduct about which Plaintiff complains was not dictated by a municipal policy and was not the product of a custom or practice maintained or authorized by anyone with final policy-making authority for the County. *See Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 769 (1st Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *Welch v. Ciampa,* 542 F.3d 927, 941 (1st Cir. 2008). In fact, the summary judgment record not only establishes that the opening of the mail outside Plaintiff's presence was not conducted pursuant to jail policy, but that the jail's policy specifically required Plaintiff's presence when opening Plaintiff's legal mail. Because Plaintiff's response in opposition to Defendants' motion fails to generate a genuine issue in support of a municipal liability claim, in the event Plaintiff's amended complaint or motion filings are construed to assert a claim against Cumberland County, the County is entitled to summary judgment.

---

[12] According to the record, Defendant Davis was the only named defendant who was ever in possession of Plaintiff's property, and after gathering the property, he placed it in front of the property room door. (Defendants' Statement of Material Facts ¶¶ 40-42, ECF No. 52.) Defendant Davis, therefore, did not destroy or discard the property.

[13] Plaintiff's amended complaint (ECF No. 8) names as a defendant the Cumberland County Jail.

## CONCLUSION

Based on the foregoing analysis, Plaintiff's motions to introduce additional evidence (ECF Nos. 71, 72) are granted. In addition, I recommend that the Court grant Defendants' motion for summary judgment (ECF No. 51) on the claims asserted by Plaintiff.[14]

## NOTICE

Any objection to this Recommended Decision and Order shall be filed in accordance with Fed. R. Civ. P. 72. With respect to the order on non-dispositive matters (i.e., the motions to introduce evidence), a party may serve and file objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(a).

With respect to the recommendations made herein, a party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. Section 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection. Fed. R. Civ. P. 72(b)(2).

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 11th day of February, 2016.

---

[14] As mentioned above (n.9), I do not construe Plaintiff's complaint to assert a state law claim based on his lost property. To the extent the Court construes his complaint to assert a state law claim, I would recommend dismissal of the claim without prejudice. *See* 28 U.S.C. § 1367(c); *Lorenzana v. S. Am. Rest. Corp.*, 799 F.3d 31, 36 (1st Cir. 2015) ("Because the district court properly dismissed the federal claims, it was well within the district court's discretion to relinquish the supplemental claims brought under [state] law.").